[Cite as *State v. Baughman*, 2014-Ohio-1821.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-49 |
| | : | |
| COLE A. BAUGHMAN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Case No. 12 CR 361

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      April 22, 2014

APPEARANCES:

For Plaintiff-Appellee:

GREGG MARX
FAIRFIELD CO. PROSECUTOR
JOCELYN S. KELLY
239 W. Main St., Ste. 101
Lancaster, OH 43130

For Defendant-Appellant:

MARK P. ORT
JACOB P. ORT
13297 Rustic Dr. NW
Pickerington, OH 43147

*Delaney, J.*

{¶1}   Appellant Cole A. Baughman appeals from the judgment entry of his conviction and sentence upon one count of felony domestic violence entered in the Fairfield County Court of Common Pleas.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   Appellee and Brandy Gavin have been in a relationship for over three years and have a child together.  The couple has lived together off and on, and as of August 10, 2012, lived together at an address on Clarenden Street in the city of Lancaster, Fairfield County, Ohio.  The home on Clarenden has no landline phone.  Gavin does not have a cell phone.  Appellant does have a cell phone.

{¶3}   Appellee has a prior domestic violence conviction in which Gavin is also the victim.

{¶4}   Gavin has two older children in addition to the daughter she shares with appellant.  On August 10, 2012, the older children were with their father and the youngest daughter was at Gavin's mother's house.  Appellant and Gavin went to a bar about a mile and a half from their home called Coach's Corner.  They took one car and appellant drove.

*Gavin's Account*

{¶5}   Gavin testified she had three beers earlier in the day at her mother's house and then continued to drink beer at the bar, as did appellant.  The pair was at the bar for around four hours, playing pool and drinking.  Gavin estimated she had 6 or 7 beers and appellant was drinking along with her.

{¶6}  Gavin testified appellant wanted to go home shortly before closing time; she said she was going to finish her drink and buy a 6-pack of beer to bring home.  She bought the 6-pack and went outside to discover appellant had already left; he left her at the bar with no car and no phone.

{¶7}  Gavin walked home, which took about 25 minutes.  She was admittedly angry and upset.   When she arrived home, she found appellant asleep on the couch in the living room.  She woke him up, yelling and cursing at him for leaving her at the bar.  The pair argued back and forth and appellant kept telling Gavin to go to bed.

{¶8}  Appellant then punched Gavin in the mouth.  Gavin went into the living room, picked up a ceramic elk, and threw it at him.  Appellant pinned Gavin to the ground and kicked her.  He then got up and left the house.

{¶9}  Appellant left his cell phone behind.  Gavin used it to call a friend from work, Tabitha Chaffin, who lived nearby, and asked her to come pick her up.  Gavin also took off her shirt because it had blood on it and put it in the basement laundry room.

{¶10} In the meantime, appellant returned to the house and they started arguing again; appellant put his foot up to kick her again and Gavin jumped over the couch.  Gavin was laying against the wall when she noticed headlights outside and ran out the front door to meet Chaffin.

*Witness Chaffin's Account*

{¶11} Chaffin and her roommate Shandra worked with Gavin.  She called them sometime in the early morning hours of August 11, 2012 and they immediately drove about 5 minutes to Gavin's house.  Gavin ran out to the car with no shirt on, only her bra; her nose was bleeding and her upper lip was swollen.  She was crying and

screaming "help me." Chaffin and Shandra helped Gavin into their car; she could barely speak. Chaffin could tell Gavin had been drinking but she did not seem drunk; she told Chaffin she had been at the bar with appellant. Chaffin saw appellant briefly come out the front door.

*Investigation by Officer David Thompson*

{¶12} Officer David Thompson of the Lancaster Police Department responded to Chaffin's apartment in response to Gavin's call. He observed apparent injuries to Gavin and requested medical attention for her although she declined to go to the hospital. Thompson took a taped statement and a written statement from Gavin and photographed her injuries. The photos were introduced by appellee at trial and show Gavin with a bloody nose, swollen lip, and also depict damage to her lip from her teeth. After speaking with Gavin, Thompson concluded violence occurred and Gavin's injuries appeared to be consistent with her story.

{¶13} His next step was to locate appellant. He first went to the residence on Clarenden. No one was there, but Thompson could see into the house from a large bay window and he observed the living-room couch was "tumbled over" onto its back. He described the rest of the room as sparsely furnished.

{¶14} Thompson next checked the residence of a friend of appellant and found appellant there. Appellant told Thompson that Gavin came at him with a knife and he hit her to disarm her. He also said she tackled him, leaving a bump on his head. Thompson observed a bump on appellant's head and felt this was consistent with what Gavin had told him earlier, that she had "tackled" appellant at one point during the fight. Thompson did not find appellant's story about a knife credible because he did not

believe someone would punch an attacker in the face to disarm them of a knife; moreover, appellant had no defensive wounds that might indicate a knife was involved. Appellant did not tell Thompson he had any other injuries to his legs, shoulders, hands, or back, or Thompson would have photographed those and made them part of the report.

{¶15} Appellant did not want to provide a taped or written statement and stated he wanted to speak to his lawyer.

{¶16} Thompson determined appellant was the primary aggressor based upon Gavin's statement, her injuries, his observation of the living room, and his determination that appellant's statements were not credible.  Upon cross examination, Thompson stated if he had observed injuries to appellant or other evidence consistent with appellant's story, he would have documented it, made no determination of which party was the primary aggressor, and forwarded the matter to the prosecutor's office to determine who should be charged.  In this case, however, regardless of what appellant might claim later, he only told Thompson, reportedly, that he had a bump on his head.

*Appellant's Testimony*

{¶17} Appellant testified on his own behalf at trial.  He claimed he had nothing to drink at all on August 10, 2012 and the early morning hours of August 11, 2012, but Gavin drank until she became "blackout drunk."  Despite her alleged condition, however, appellant left her at the bar despite admitting he knew she had no way to get home.  He went home and went to sleep on the couch.

{¶18} Appellant testified he was awakened by Gavin in a violent rage, slamming a child's laptop computer toy on his forearms and hands.  He stated she broke his

finger, although it healed while he was in jail; she also left bruises on his thighs, along with red marks and cuts. Appellant begged her to stop but she hit him in the back of the head with a glass ashtray. She then threw a ceramic moose at him which caught him in the back.

{¶19} Appellant said he decided to leave and ran out to get in his car, but came back in when he realized he forgot his keys. When he came back in, he found Gavin standing with three knives in her hand, yelling that she was going to "cut [the] f'ing car up." Gavin ran into the garage and then came back toward him with a knife raised. He put up his hand to stop her. To stop Gavin with the knife, appellant hit her; she didn't stop so he hit her again. He denied kicking or stomping her. Appellant stated Gavin is capable of "bullying" him because she weighs over 100 pounds more than him.

{¶20} Appellant said he left the house again, only to discover he again forgot his keys. When he came back in this time, Gavin had used his cell phone to call her friends to come pick her up. After she left, appellant went to the house of a friend and fell asleep.

{¶21} When the police officer arrived to speak to him, appellant said he told the officer he was only trying to protect himself and he was truly the victim, but the officer said it was "shift change" and he was under arrest. Appellant said he never had an opportunity to show the officer his injuries because the officer was in such a hurry; appellant also stated he never said he wanted to talk to his lawyer.

*Defense Witnesses*

{¶22} Appellant called a number of friends and family members to testify to Gavin's alleged reputation for violence and untruthfulness and appellant's alleged

reputation for peacefulness and honesty. One of those friends was Robert Smith, the owner of the house appellant went to on the night of the incident, where he was ultimately arrested. Smith testified he heard the entire exchange between appellant and the police officer; he testified he clearly heard appellant say he didn't want to say anything and wanted to talk to his lawyer.

*Indictment, Conviction, and Sentence*

{¶23} Appellant was charged with one count of domestic violence pursuant to R.C. 2919.25(A), a felony of the fourth degree. The felony count was premised upon appellant's prior conviction upon one count of domestic violence, a misdemeanor of the first degree, in Fairfield County Municipal Court Case Number CRB 1001153. Appellee introduced a certified copy of this conviction at trial.

{¶24} Appellant entered a plea of not guilty and the case proceeded to trial by jury.[1] Appellant was found guilty as charged and sentenced to a prison term of 15 months.

{¶25} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶26} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶27} "I. THE TRIAL COURT COMMITTED ERROR WHEN IT PERMITTED THE TESTIMONY OF A NOMINAL "EXPERT" WHERE THE NOMINAL "EXPERT" STATED SHE HAD NO PERSONAL KNOWLEDGE OF ANY FACT AT ISSUE WHERE

---

[1] No motion for acquittal pursuant to Crim.R. 29(A) was made at the close of appellee's evidence or at the close of all of the evidence. Appellant does not challenge the sufficiency of appellee's evidence in the instant appeal.

THE SOLE PURPOSE OF PUTATIVE "EXPERT" TESTIMONY WAS TO BOLSTER THE CREDIBILITY OF THE ALLEGED VICTIM AND TO DISCREDIT THE DEFENDANT."

{¶28} "II. THE TRIAL COURT COMMITTED ERROR WHEN IT PRECLUDED THE DEFENDANT FROM INTRODUCING REBUTTAL EVIDENCE REGARDING THE ALLEGED VICTIM'S PEACEFUL CHARACTER AFTER THE ALLEGED VICTIM CLAIMED TO BE A PEACEFUL PERSON."

{¶29} "III. THE EVIDENCE WAS SUCH THAT REASONABLE MINDS COULD NOT CONCLUDE THAT THE CHARGED OFFENSE HAD BEEN PROVEN BEYOND A REASONABLE DOUBT; THAT THE DEFENDANT HAD USED EXCESSIVE FORCE IN REPELLING AN ASSAULT WITH A DEADLY WEAPON AND THUS THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I.

{¶30} In his first assignment of error, appellant asserts the trial court erred in permitting the testimony of an expert in the cycle of domestic violence and domestic violence relationships. We disagree.

{¶31} The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶32} Prior to commencement of trial, appellee had reason to believe Gavin would not appear to testify and a hearing was held to establish her unavailability as a

witness. On the eve of trial, however, Gavin was found, arrested, and brought to the courtroom in custody to testify as appellee's witness. Appellee clearly anticipated Gavin would recant or otherwise refuse to cooperate, but on the stand, Gavin related the same events she told Thompson the night of the incident per her domestic violence incident report, appellee's Exhibit 6. Gavin did not recant but she did acknowledge her continuing, ongoing relationship with appellant despite past domestic violence and the incident for which he was on trial. She testified she still loved him as the mother of her child and explained she was reluctant to testify because appellant, friends, and family members told her she would be in trouble over allegations of criminal behavior against her.

{¶33} After Gavin testified, appellee advised the trial court of the next witness, Suzanne Pelletier-Capatini, the executive director of a counseling center and shelter for domestic violence victims and their children. Pelletier-Capatini has testified as an expert witness on domestic violence issues in other civil and criminal trials. The trial court conducted a voir dire of the witness to determine the extent of her testimony. During voir dire, the witness testified she never spoke to Gavin or appellant personally and only knew the facts of the incident as related by appellee. Her purpose at trial was to explain in general terms why a victim might recant criminal allegations of domestic violence in light of the cycle of violence. On cross examination, she was asked what she could offer if the victim did not recant the allegations, and the witness proffered her testimony on the process of victimization in a violent relationship and why a victim might behave counter-intuitively, such as continuing to contact the offender. The trial court

noted the jury was aware Gavin testified because she was arrested and therefore ruled the witness could testify to a limited extent on the effects of victimization.

{¶34} The jury was brought in and although appellee tried to revisit the areas of Pelletier-Capatini's expertise and details about the cycle of violence, appellant objected and the trial court advised appellee to wrap it up. The witness' direct testimony concluded with her opinion it is common for victims to deny an incident occurred or otherwise be reluctant to testify because prosecution generally occurs in the period of "loving contrition" which evokes a sense of guilt and shame in the victim.

{¶35} The admissibility of expert testimony on the cycle of domestic violence has been extensively addressed by the Ohio Supreme Court, which held testimony about battered-woman syndrome may be offered by the state in its case-in-chief in limited circumstances in *State v. Haines,* 112 Ohio St.3d 393, 860 N.E.2d 91, 2006–Ohio–6711. If a "victim's credibility is challenged upon cross-examination during the state's case-in-chief, the state may introduce expert testimony regarding battered-woman syndrome to aid the trier-of-fact in determining the victim's state of mind, e.g., to explain why she returned to the defendant despite his aggressions toward her." *Id.* The state must first, however, set forth an evidentiary foundation showing the witness is, in fact, a battered woman. *Id.* at ¶ 46–47, 860 N.E.2d 91. "[T]he party seeking to introduce battered woman syndrome evidence must lay an appropriate foundation substantiating that the conduct and behavior of the witness is consistent with the generally recognized symptoms of the battered woman syndrome, and that the witness has behaved in such a manner that the jury would be aided by expert testimony which provides a possible

explanation for the behavior." *Id.* at ¶ 47, 860 N.E.2d 91 (quoting *State v. Stringer,* 271 Mont. 367, 897 P.2d 1063, 1070 (Mont.1995).

{¶36} While the Supreme Court has rejected "a set of rigid foundational requirements," it has imposed two specific limitations on the admission of cycle of violence and battered-woman-syndrome testimony. *Haines,* supra, 2006–Ohio–6711 at ¶ 47. First, there must be evidence generally establishing the cycles of a battering relationship. *Id.* at ¶ 48. Second, the couple at issue must have "go[ne] through the battering cycle at least twice." *Id.* at ¶ 49, citing *State v. Koss,* 49 Ohio St.3d 213, 216, 551 N.E.2d 970 (1990). In addition, to avoid prejudice to the defendant, "experts who are called to testify in domestic violence prosecutions must limit their testimony to the general characteristics of a victim suffering from the battered woman syndrome. The expert may also answer hypothetical questions regarding specific abnormal behaviors exhibited by women suffering from the syndrome, but should never offer an opinion relative to the alleged victim in the case." *Id.* at ¶ 56, citing Matthew P. Hawes, *Removing the Roadblocks to Successful Domestic Violence Prosecutions: Prosecutorial Use of Expert Testimony on the Battered Woman Syndrome in Ohio,* 53 Clev. St. L.Rev. 133, 158 (2005–06).

{¶37} In the instant case, Gavin testified in this incident she did not request a temporary protection order despite its availability to her. She further testified she had reported two prior domestic violence incidents with appellant to police; in the first she did not cooperate with prosecution at all and apparently charges were dismissed. The second time resulted in appellant's misdemeanor conviction and a requirement that the two have "peaceful contact;" they lived apart for a while, although still in a relationship,

then appellant moved back in. Gavin testified she still loves appellant because he is the father of her child. She acknowledged she is cooperating with prosecution in the instant case only because she was arrested and brought to court. She acknowledged she and appellant have regular, ongoing contact despite a no-contact order. Gavin admitted her reluctance to testify was due to appellant telling her the case would be thrown out if she didn't show up for court. He also told her his lawyer would use information against her about her use of appellant's debit card and she was scared.

{¶38} Pelletier-Capatini gave general information about the cycle of violence and acknowledged she never met or interviewed the parties. She explained her testimony was to attempt to explain the counter-intuitive behavior of victims of domestic violence who return to their abusers and are reluctant to cooperate with authorities.

{¶39} We find the testimony offered in this case met the *Haines* criteria and the trial court did not err in admitting it. See, e.g., *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, appeal not allowed, 128 Ohio St.3d 1517, 2011-Ohio-2686, 948 N.E.2d 451; *State v. Drew*, 10th Dist. Franklin No. 07AP-467, 2008-Ohio-2797, appeal not allowed, 120 Ohio St.3d 1418, 897 N.E.2d 653, 2008-Ohio-6166; *State v. Caudill*, 6th Dist. Wood No. WD-07-009, 2007-Ohio-1557, appeal not allowed, 119 Ohio St.3d 1447, 893 N.E.2d 517, 2008-Ohio-4487. Appellant attacked Gavin's credibility on a number of grounds, from her history as a victim of violence with appellant and others to her alleged drinking. Appellee established at least two cycles of violence. In addition, the expert who testified made only generalized statements and did not offer an opinion regarding the evidence in this case.

{¶40} Appellant's first assignment of error is overruled.

II.

{¶41} In his second assignment of error, appellant argues the trial court erred in excluding extrinsic evidence of the victim's character. We disagree.

{¶42} Appellant argues he should have been allowed to present evidence of Gavin's "violent and assaultive character; her habit and routine of assaulting those with whom she disagreed; and her habit of making false allegations." The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶43} A victim's violent acts may become relevant and admissible only under certain limited circumstances. "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, although evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible." Evid.R. 404. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion.

{¶44} On cross-examination, inquiry is allowable into relevant specific instances of conduct. Evid.R. 405(A). In cases in which character or a trait of character of a

person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct. Evid.R. 405(B).

{¶45} Appellant argues evidence showing Gavin "was a controlling and violent person" was relevant to his claim of self-defense. Prior to trial, appellee filed a motion in limine to exclude any such evidence. The trial court ruled appellant could get into specific acts only if appellee opened the door to such testimony. In *State v. Barnes*, the Ohio Supreme Court ruled specific instances of a victim's conduct are not admissible to prove the victim was the initial aggressor. 94 Ohio St.3d 21, 23, 2002–Ohio–68, 759 N.E.2d 1240. We note appellant made no proffer of the evidence he would offer of Gavin's alleged propensities for violence and untruthfulness, and it is unclear from the record how he would have introduced these specific acts. We find the specific-act evidence appellant advocates in his brief, however to be exactly the type prohibited by *Barnes*, supra, and the trial court did not err in excluding it.

{¶46} Appellant did in fact introduce evidence of Gavin's propensity for violence and untruthfulness by means of reputation or opinion testimony during the testimony of appellant and his witnesses. In fact, they were given broad latitude in addressing Gavin's alleged violent and untruthful past, including delving into her alleged debts and drinking issues.

{¶47} The trial court did not err in excluding further unspecified character evidence of the victim. Appellant's second assignment of error is overruled.

III.

{¶48} In his third assignment of error, appellant argues his domestic violence conviction is against the manifest weight of the evidence. We disagree.

{¶49} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶50} Appellant was convicted upon one count of domestic violence pursuant to R.C. 2919.25(A), which states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellee's evidence clearly established appellant, by his own admission, hit Gavin in the face twice, causing her nose to bleed and her lip to swell. Appellant responds he only repelled the attack by Gavin, the police didn't fully investigate the crime, and no rational trier of fact could have found this was not self-defense. We disagree.

{¶51} Self-defense is a "confession and avoidance" affirmative dense in which appellant admits the elements of the crime but seeks to prove some additional element that absolves him of guilt. *State v. White*, 4th Dist. Ross No. 97 CA 2282, unreported,

1998 WL 2282 (Jan. 14, 1998). The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance of the evidence. *In re Collier*, 5th Dist. Richland No. 01 CA 5, unreported, 2001 WL 1011457 (Aug. 30, 2001), citing *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist.1992). The proper standard for determining whether a criminal defendant has successfully raised an affirmative defense is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable persons concerning the existence of the issue. *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus.

{¶52} We find in the instant case appellant failed to establish sufficient evidence which, if believed by the jury, would raise a question in the minds of reasonable persons concerning the existence of the issue of self-defense. To establish self-defense in the use of non-deadly force, the accused must show 1) he was not at fault in creating the situation giving rise to the altercation; 2) the accused had reasonable grounds to believe and an honest belief, even though mistaken, that some force was necessary to defend himself against the imminent use of unlawful force; and 3) the force used was not likely to cause death or great bodily harm. *State v. Hoopingarner*, 5th Dist. Tuscarawas No. 2010AP 07 00022, 2010-Ohio-6490, ¶ 31, citing *State v. Vance*, 5th Dist. Ashland No. 2007-COA-035, 2008-Ohio-4763, ¶ 77 (citations omitted). If any one of these elements is not proven by a preponderance of the evidence, the theory of self-defense does not apply. *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990). Questions of credibility, of course, are for the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Appellant claimed Gavin had a knife; she

said she did not.   The jury was free to accept or reject appellant's self-serving testimony, and they chose to reject it.   We have reviewed the record of the case and find appellant's conviction is not against the manifest weight of the evidence.   His claims of self-defense are not borne out by the physical evidence, and in the end, the jury could reasonably find he was in fact the primary aggressor in the incident.

{¶53} Appellant's third assignment of error is overruled.

## CONCLUSION

{¶54} Appellant's three assignments of error are overruled and the judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Delaney, J. and

Farmer, J. concur with

Hoffman, P.J. concurring separately

*Hoffman, P.J., concurring*

{¶55} I concur in the majority's analysis and disposition of Appellant's three assignments of error. I write separately only to voice my ongoing concern as to the proper standard of review to be employed by an appellate court of evidentiary rulings made by the trial court.

{¶56} This Court, including this writer, has often cited *State v. Sage* (1987), 31 Ohio St.3d, 173, for the proposition the admission or exclusion of evidence rests in the sound discretion of the trial court. The majority twice references *State v. Hymore* (1967), 9 Ohio St.2d, 122, for the same proposition.

{¶57} Syllabus No. 2 in *Sage* specifically references "relevant" evidence. A review of *Hymore,* likewise, reveals it was analyzing the admission of "relevant" evidence. While I readily agree some evidentiary rulings are discretionary and are to be reviewed under an abuse of discretion standard, I feel the *Sage/Hymore* decisions have been misapplied to all evidentiary rulings.

{¶58} I believe many evidentiary rulings should be reviewed de novo as a matter of law. For example, whether a public record qualifies as an exception to the hearsay rule; or whether an exhibit has been properly authenticated or identified. If error occurs in the admission or exclusion of such evidence, I believe the standard of review should be whether such error was harmless or prejudicial under Evid.R. 103.

{¶59} As it pertains to the case sub judice, the Ohio Supreme Court established legal prerequisites for admission of expert testimony on the battered-woman-syndrome in *State v. Haines*, 2006-Ohio-6711. While the initial determination of whether a witness' testimony relates to matter beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons (required under

Evid.R. 702) may well be a discretionary call, the decision to admit or exclude testimony regarding the cycle of domestic violence would appear to be a legal one.

{¶60} Likewise, I would find the trial court's rulings concerning Evid.R. 404 and 405(A) lend themselves to review as a matter of law as compared to a discretionary standard.