[Cite as *State v. Cooper*, 2016-Ohio-5064.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P.J. |
|     Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 14-COA-039 |
| DANIEL SEAN COOPER | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Court of Common
Pleas, Case No. 13-CRI-055


JUDGMENT:                 Affirmed in Part, Sentence Vacated,
and Remanded


DATE OF JUDGMENT ENTRY:      July 22, 2016


APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER E. BALLARD
110 Cottage Street
Third Floor
Ashland, OH  44805

For Defendant-Appellant

BRIAN J. HALLIGAN
1105 Broad Street
P.O. Box 455
Ashland, OH  44805

*Farmer, P.J.*

{¶1}   In June 2009, appellant, Daniel Sean Cooper, pled guilty in a Summit County, Ohio case to one count of pandering obscenity involving a minor in violation of R.C. 2907.321.  The Summit County trial court sentenced appellant to three years in prison, imposed five years of post-release control, and ordered him to register as a Tier I sex offender.  Appellant's competency had been raised, but after evaluation, the trial court found appellant was competent to stand trial.

{¶2}   On May 14, 2013, a search warrant was executed on the Ashland, Ohio residence of appellant's mother and stepfather based on suspected downloads of child pornography to a computer located within the residence between April 27, and 29, 2013.  The computer was seized and child pornography files were discovered.  Appellant lived in Medina, Ohio, but frequently visited his mother, staying for two to three days at a time, and was found at the residence during the execution of the search warrant.

{¶3}   On May 24, 2013, a complaint was filed charging appellant with five counts of pandering sexually oriented matter involving a minor in violation of R.C.2907.322.  A bond hearing was held on May 29, 2013, wherein appellant indicated he may want to represent himself.  The trial court found appellant indigent and appointed Attorney Rolf Whitney to represent appellant.

{¶4}   On May 30, 2013, the Ashland County Grand Jury indicted appellant on thirteen counts of pandering sexually oriented matter involving a minor in violation of R.C.2907.322.  Appellant was arraigned on May 31, 2013, via iVisit wherein appellant, through counsel, pled not guilty to the charges.  On July 1, 2013, appellant appeared in

open court and again entered pleas of not guilty and indicated he wanted to represent himself.

{¶5} On September 13, 2013, the state filed a motion for hearing to lay a foundation for appellant's waiver of counsel. A hearing was held on October 7, 2013, wherein appellant again indicated he wanted to represent himself.

{¶6} On December 9, 2013, appellant filed a motion for the appointment of counsel specifically, Attorney Andrew Hyde. A hearing was held on December 26, 2013, and Attorney Whitney was present for the hearing. By judgment entry filed December 27, 2013, the trial court vacated the prior appointment of Attorney Whitney and appointed Attorney Hyde to represent appellant per appellant's request.

{¶7} On March 27, 2014, appellant filed a motion to fire Attorney Hyde and proceed pro se. A hearing was held on April 2, 2014, wherein appellant indicated he wanted to withdraw the motion.

{¶8} On April 16, and 28, 2014, appellant again filed motions to fire Attorney Hyde. A pretrial was held on April 28, 2014, one week prior to the scheduled trial date, wherein the trial court denied appellant's requests.

{¶9} On April 30, 2014, Attorney Hyde filed a request for a competency evaluation. A hearing was held on June 5, 2014. By judgment entry filed June 23, 2014, the trial court found appellant was competent to stand trial. The trial court also granted appellant's oral request to proceed pro se, but required Attorney Hyde to remain as standby counsel.

{¶10} On July 9, 2014, appellant filed a motion to remove Attorney Hyde from his case. By judgment entry filed September 30, 2014, the trial court denied the motion.

{¶11} On November 5, 2014, the state filed an Evid.R. 404(B) notice of intention to use appellant's prior conviction for pandering obscenity involving a minor to prove identity.

{¶12} A jury trial commenced on November 18, 2014. Appellant represented himself with Attorney Hyde present as standby counsel. The jury found appellant guilty as charged.

{¶13} A sentencing hearing was held on November 25, 2014. By judgment entry filed same date, the trial court sentenced appellant to two years on each of the thirteen counts, to be served consecutively, for an aggregate term of twenty-six years in prison. The trial court also found appellant had violated his post-release control from Summit County and therefore sentenced appellant to an additional twenty-four months, to be served consecutively to the twenty-six year sentence.

{¶14} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶15} "APPELLANT DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE HIS RIGHT TO COUNSEL IN WRITING AS THE TRIAL COURT FAILED TO FULLY ADVISE THE APPELLANT OF THE CONSEQUENCES OF PROCEEDING PRO SE."

II

{¶16} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED APPELLANT TO CONSECUTIVE 2 YEAR SENTENCES FOR AN AGGREGATE 28 YEARS IN PRISON."

III

{¶17} "THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING APPELLANT'S PRIOR FELONY CONVICTION FOR THE SAME CHARGE INTO EVIDENCE DESPITE THE FACT THAT THE APPELLANT DID NOT TESTIFY."

I

{¶18} Appellant claims the trial court erred in failing to ensure his waiver of trial counsel was knowingly, intelligently, and voluntarily waived in writing pursuant to Crim.R. 44(C). We disagree.

{¶19} Crim.R. 44(C) states: "Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing."

{¶20} The state concedes a written waiver of counsel was not obtained in this case. However, if substantial compliance with the rule is demonstrated, the failure to file a written waiver is harmless error. *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471. "A valid waiver of counsel can be either express or implied from the circumstances of the case." *State v. Weiss,* 92 Ohio App.3d 681, 684 (9th Dist.1993). Once a defendant has waived his or her right to counsel, the trial court is free to appoint standby counsel, even over the objection of the accused. *Martin, supra*.

{¶21} In *State v. Gibson,* 45 Ohio St.2d 366 (1976), syllabus, the Supreme Court of Ohio held the following:

1. The Sixth Amendment, as made applicable to the states by the

Fourteenth Amendment, guarantees that a defendant in a state criminal trial

has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so. *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

2. In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.

{¶22}  As explained by the United States Supreme Court in *Von Moltke v. Gillies,* 332 U.S. 708, 723-724 (1948):

To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.  The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.

{¶23}  In *Iowa v. Tovar,* 541 U.S. 77, 88-89 (2004), the United States Supreme Court acknowledged the following:

We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.  The

information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

As to waiver of trial counsel, we have said that before a defendant may be allowed to proceed *pro se,* he must be warned specifically of the hazards ahead. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), is instructive. The defendant in *Faretta* resisted counsel's aid, preferring to represent himself. The Court held that he had a constitutional right to self-representation. In recognizing that right, however, we cautioned: "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing…" *Id.,* at 835, 95 S.Ct. 2525 (internal quotation marks omitted).

{¶24} As stated by this court in *State v. Horn,* 5th Dist. Delaware No. 08 CAA 11 0069, 2009-Ohio-5983, ¶ 10:

We have recognized that although some requests for self-representation "often test the patience of trial courts and prosecutors ready to proceed, the colloquy requirements of *Gibson* must apply." *State v.*

*Blankenship,* Perry App. No. 06 CA 17, 2007-Ohio-3541, ¶ 46.  Appellant herein maintains that precedent from this Court has "vigorously enforced" the *Von Moltke* factors set forth in *Gibson.*  Appellant's Brief at 8.  However, we agree with the State that Ohio law does not require a mechanistic checklist of factors.  See, e.g., *State v. Doyle,* Pickaway App. No. 04CA23, 2005-Ohio-4072, ¶ 11.  We have not abrogated a "totality of the circumstances" approach on issues of waiver of counsel, as appellant seems to suggest.  See, e.g., *State v. Drake* (May 22, 2001), Perry App. No. 00CA10, 2001 WL 575123.

{¶25}  During his May 29, 2013 bond hearing, appellant indicated he may want to represent himself, and the trial court appointed Attorney Whitney to represent appellant. T. at 7-9.

{¶26}  On July 1, 2013, appellant appeared in open court and the following exchange occurred (T. at 5-6):

THE COURT: And it's still your intention to represent yourself in this matter, Mr. Cooper?

MR. COOPER: Yes, sir, the way that I see it is, it's not that I don't feel he's sincere, I believe that - - I believe that I might be just better off to represent myself.

THE COURT: Do you understand Mr. Whitney is going to be there to advice (sic) you and give you - -

MR. COOPER: Absolutely.

THE COURT: - - give you whatever assistance that you need?

MR. COOPER: Yes, honestly, the intent was to get materials, and you know, maybe come to a compromise before I have to defend myself, but obtain the materials to realize what the Court proceeding is and how to go about defending myself.

THE COURT: For purposes of negotiations, are you going to be utilizing Mr. Whitney to negotiate on your behalf with the State, because you understand that you have a right not to make any statement that could in the future be used against you?

MR. COOPER: I mean, I mean, with given the understanding that if a deal was offered or something, then I would have to say, yes, you know what I mean?  I don't want him to be able to say yes for me because me saying yes.

THE COURT: Well, Mr. Whitney can not (sic) say yes without your consent.

MR. COOPER: Okay.

THE COURT: And if there was any deal, you would be brought into court and we would make sure that you understand the nature of the agreement and whether or not you agree to that voluntarily, so I just want to make sure that we are all on the same page.  Anything else, Mr. Whitney?

MR. WHITNEY: No, sir, Dan and I had that discussion, Judge, so he understands that.

{¶27} On September 13, 2013, the state filed a motion for hearing to lay a foundation for appellant's waiver of counsel.  A hearing was held on October 7, 2013, and the following exchange occurred (T. at 6-7):

THE COURT: I am not addressing what has been happening in the case, I am asking if you understand the way that the case will proceed if you advise the Court today that you wish to represent yourself.  Mr. Whitney will no longer be made available to you unless this matter goes to trial.  My prior Order denying you access to the law library would be rescinded, and we will make arrangements for you to have access to the law library, but then you would no longer have the services of Attorney Whitney, and you would be held to the same standards in terms of Notice upon the Prosecuting Attorney of anything that you file with the Court, and basically be held in the same standard as any other attorney.

Do you understand all of that?

MR. COOPER: Yeah, I understand that, yes, absolutely.

THE COURT: Okay, is it your desire to represent yourself in this matter, and to forgo court appointed counsel except as to advise you as to the procedure at trial?

MR. COOOPER: Yes, sir.

THE COURT: Okay.  That being the case, Mr. Whitney, you are excused until trial.

{¶28}  The following exchange then occurred (T. at 9-14):


MS. ROGERS: Judge, the only thing that I might suggest is, I don't know if the Court has Gibson in front of it, and I do if the Court wanted to follow some of the language, but in addition to representing himself, you know, I think that he has to be told if his questions are improper and they don't (inaudible) you are not here to serve as his lawyer.  That he may not be able to ask any questions.  I am intending to object if he doesn't know the argument and (inaudible) to my objections, et cetera, I think maybe the court needs to go into a little bit more detail of what is going to happen if he falls on his face during trial.

THE COURT: I can certainly do that.  I just did not understand what you wanted the scope of this hearing to be since you referenced the Gibson matter (inaudible) applying that at this point, but that was before he stated that he wanted to represent himself.  So that is where I got confused.

Mr. Cooper, do you understand that as the Prosecuting Attorney has indicated, you will be held to the same standard of any other attorney that would be practicing in the courtroom?

You have a Constitutional right to represent yourself, we will proceed without Counsel but you need to understand that Mr. Whitney is only going to be here to advise you as to procedures that there are, rules that govern conducting a trial as to the questioning and admission of evidence, and you

will be expected to follow these rules if evidence is offered in a manner that violates the rules of evidence, then the Prosecutor objects to that evidence, it won't be admitted, and if you ask improper questions and the Prosecution objects, your questions will be stricken from the Record and the jury will be advised to disregard that question.

The fact that you represent yourself, as well, does not give you unfettered discretion to be disruptive in the courtroom either, and you must show proper respect for the Court and proceedings during the course of the trial, or you could be removed from the courtroom. Do you understand that?

MR. COOPER: Yes, sir, I just wondered, so Mr. Whitney is completely excused, I can't - -

THE COURT: He's completely excused until trial. He will be here at trial to advise you as to procedures, as to any questions.

MR. COOPER: Any motions that I want - -

THE COURT: You have to file those yourself and serve the Prosecuting Attorney a copy of anything that you file with the Court.

MR. COOPER: Okay. All right. I guess.

THE COURT: And he's not going to be discussing the motion with you. If the Prosecutor files a motion, you will be responsible for responding to any pretrial motions filed by the State, and Mr. Whitney will not be assisting you and preparing any response to those motions.

MR. COOPER: Okay. One last question, how often would I have access to the law library, if I might.

THE COURT: I am granting you access, so it's a question of what you need and what the Sheriff's office can provide in terms of getting you here and back.

MR. COOPER: I mean, do you think that once every two weeks would be - - I mean, would be doable?

THE COURT: I would prefer not to put a specific time schedule on that because if I say once every two weeks and you need to look something up in response to a State's motion and you already had your one for the two weeks, that would limit your access.

MR. COOPER: Well, that is kind of what I am getting at. I am kind of leery that they might further restrict me by saying, Ohio Revised Code we cannot do it today, Ohio Revised Code we cannot do it today, well, we cannot do it today.

THE COURT: If that happens then you are representing yourself, you can file a motion with the Court and give the Prosecuting Attorney a chance to respond to the motion and we will address the issue.

MR. COOPER: All right.

THE COURT: And if it became a problem, we will try to correct the problem.

MR. COOPER: Okay. I would appreciate that. Then, yeah, I am fine with that, absolutely, I mean, I hate to say it, but I think that I feel, Mr. Whitney probably would do a fairly good, but I think that, you know, the Prosecution has too much support and it would overpower him. I think that

I have to defend myself. I have to represent myself. I have to represent myself, there is no way around it.

THE COURT: And you fully understand the consequences of proceedings on your own?

MR. COOPER: Yes, sir.

THE COURT: And you understand the limitations that will be on Mr. Whitney subject to the terms of his attorney?

MR. COOPER: Yes, sir.

THE COURT: Anything else that you feel that the Court needs to advise the Defendant on?

MS. ROGERS: No, thank you, Judge.

{¶29} On December 9, 2013, appellant filed a motion for the appointment of counsel specifically, Attorney Hyde. A hearing was held on December 26, 2013, and Attorney Whitney was present for the hearing. By judgment entry filed December 27, 2013, the trial court vacated the prior appointment of Attorney Whitney and appointed Attorney Hyde to represent appellant as appellant requested. Thereafter, appellant filed several motions to fire Attorney Hyde which the trial court denied.

{¶30} During the competency hearing held on June 5, 2014, the trial court found appellant competent to stand trial and appellant again indicated he wanted to proceed pro se. The following exchange occurred (T. at 7-11):

THE COURT: Thank you, Mr. Hyde. Mr. Cooper, you have been afforded the service of two of the better, if not the best criminal defense attorneys that do work in Ashland County on an appointed basis, that being Mr. Whitney and Mr. Hyde. You have previously requested that you be entitled to represent yourself when Mr. Whitney was representing you and appointed to represent you, and the Court even made available an opportunity for you to utilize the law library. And then got to a point where trial was imminent, and you requested appointed Counsel again. And you did not want Mr. Whitney, so we appointed Mr. Hyde, and then here we proceeded along, and a day before trial we have something that kicks the can down the road again, and now here we are again, with you requesting that you be permitted to represent yourself, and that you don't want Mr. Hyde as standby Counsel.

Well, Number 1, even if I let you represent yourself you are having standby Counsel because I am not going to give you an argument on appeal purposes if you are subsequently convicted in representing yourself, that you did not have an opportunity to consult with Counsel, and I think that you are entitled to that right, and at a bear (sic) minimum, the Court has to afford you an opportunity to when you find yourself in the midst of trial to have the opportunity to consult with Counsel, if you feel the need once you get into the process or that procedure, and Mr. Hyde, as a minimum, is going to be there to provide you with that support or answer your questions.

If you decide to proceed to represent yourself at trial, which I certainly would advice (sic) strongly against you at trial, I think that would place you at a significant disadvantage with a jury, but it's ultimately your choice.

Previously, under previous administration, the State took the position that your standby Counsel could not assist you with legal research, you were either standby there for trial and afforded you no assistance whatsoever in trial preparation and we went down that road, and I don't know, Mr. Tunnell, if you have the same position. I am quite frankly willing to have Mr. Hyde assist in legal research so we don't have to trouble with the jail staff with bringing Mr. Cooper up here afterhours and babysitting him while he rifles through documents and books in the law library, sometimes knowing what he wants and sometimes having no idea what he's looking for.

And at least provide that assistance in the Court of his trial preparation where at least if he could identify specific materials where he wanted them, Mr. Hyde could upon being compensated by the County, at least obtain those material or that information for Mr. Cooper to facilitate his defense preparation if he's going to represent himself. I don't know how you feel about that, Mr. Hyde, but I think I am not asking you to do the research yourself, but he has got, if you are to assist him, he has to focus to pretty much tell you what he's looking for.

MR. HYDE:   I saw that as the second part of our request today, I was going to request that the Court allow me to assist Mr. Cooper preparing,

to try his own case and obtain the materials, he told me that the Deputy would sit there for four hours at a time in the law library, I would prefer that the court allow me to bring what books he needs to him at jail and assist him at the pretrial, but that - -

THE COURT: Well, that is the position that I took before, the State objected to that, and that was fine.  But like I said, we have new administration at the Prosecutor's office so Mr. Tunnell, what would be your position in that regard?

MR. TUNNELL: Judge, I never thought it proper to take a position on the status of representation of a criminal Defendant or insert myself in that way.  My opinion is, if someone is Pro Se and has a legal advisor, they are an advisor in all respects, not just at trial, but throughout the process.

THE COURT: Okay.

MR. TUNNELL: And additionally, having Counsel and paying a deputy for four hours doesn't make sense.

THE COURT: It doesn't make a whole lot of sense.

MR. TUNNELL: It doesn't get you anywhere, and it doesn't make for a descent (sic) record, and is at a big enough disadvantage being Pro Se without that.  And if there were some change of heart down the line and would flip flop and Mr. Hyde is back in the first chair, I would prefer that he be ready to go at a moment's notice if that happens and we don't have to continue this again.

So no objection to that request, Your Honor.

THE COURT: Then that would be the Order of the Court, Mr. Hyde, you may assist Mr. Cooper. Mr. Cooper, I am going to go ahead and let you represent yourself, in this matter, Mr. Hyde will be designated as standby Counsel.

{¶31} During a November 13, 2014 pretrial, the trial court notified appellant of the following (T. at 6-7):

THE COURT: ***and just so you are aware, Mr. Cooper, we are also making arrangements if you became disruptive during the point of the trial that we cannot proceed properly with the trial, the Court will at that time consider removing you from the courtroom and allowing your standby Counsel to proceed on your behalf, and we would have a camera set up so you can watch the proceedings from another location.

That is if you became too disruptive, you would be warned before that would ever happen, but you just need to be aware that would be a possibility if you became too disruptive.

{¶32} The following exchange then occurred (T. at 7-8):

MR. COOPER: I mean as far as that goes, if that were to happen and I was represented by counsel, whatever, if I was on camera, does that mean that I am still making the decisions or does he automatically make all the decisions?

THE COURT: Well, we would basically have a Bailiff back with you and you are watching a video, and if there is something that you needed to communicate with your attorney on, we would have one Bailiff radio the Bailiff in the courtroom, it would not be disruptive because they have ear pieces, at which point the Bailiff would advice (sic) the Court that we needed to possibly pause to allow you to consult with Mr. Hyde, so, yes, you would be in control.

MR. COOPER: All right, I think that I understand how that is supposed to go.

THE COURT: Okay.

MR. COOPER: I guess that is good.

{¶33} The trial commenced on November 18, 2014, and appellant represented himself with Attorney Hyde seated beside him at the defense table as standby counsel. T. at 6.

{¶34} Based on the numerous pretrial proceedings, we find the trial court thoroughly investigated appellant's desire to represent himself and sufficiently advised him of the consequences of his waiver of the right to counsel. Appellant was informed of the charges against him and was advised that during trial, he would be held to the same procedural standards as an attorney. The record demonstrates that appellant was literate, competent, understanding of the consequences of self-representation, and exercised free will. The trial court even provided standby counsel to aid appellant at all times.

{¶35} Despite the lack of a written waiver of counsel, we find the trial court substantially complied with Crim.R. 44(C), and appellant had sufficient understanding of the proceedings and the consequences of representing himself to make a voluntary, knowing, and intelligent waiver of the right to counsel and proceed pro se with the aid of standby counsel.

{¶36} Assignment of Error I is denied.

II

{¶37} Appellant claims the trial court abused its discretion in imposing consecutive sentences for an aggregate twenty-eight year prison term.

{¶38} Pursuant to the Supreme Court of Ohio's recent holding in *State v. Marcum,* ___ Ohio St.3d ___, 2016-Ohio-1002, ¶ 7, this court will review a felony sentence using the standard set forth in R.C. 2953.08, and will no longer apply the abuse of discretion standard under *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912. R.C. 2953.08 governs appeals based on felony sentencing guidelines. Subsection (G)(2) sets forth this court's standard of review as follows:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court

abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶39} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶40} R.C. 2929.11 governs overriding purposes of felony sentences and states the following:

(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for

incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

(C) A court that imposes a sentence upon an offender for a felony shall not base the sentence upon the race, ethnic background, gender, or religion of the offender.

{¶41} R.C. 2929.14(C)(4) governs consecutive sentences and states the following:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶42} In its judgment entry filed November 25, 2014, the trial court sentenced appellant to two years on each of the thirteen counts, to be served consecutively, for a total aggregate term of twenty-six years in prison. The trial court also imposed a twenty-four month sentence for violating post-release control, to be served consecutively to the twenty-six year term.

{¶43} During the sentencing hearing held on November 25, 2014, the trial court found the following regarding consecutive sentences (T. at 20-21):

THE COURT: ***I am finding that consecutive service of the sentence is necessary to protect the public from future crime, and

consecutive sentencings are certainly not disproportionate to the seriousness of your conduct, and the danger that you pose to the public. And that you committed those offenses while you were subject to Post-Release Control and you are under specific prohibitions not to do that conduct over and above what the statute in the State of Ohio required.

I am further finding that you are in violation of that Post-Release Control Supervision and I am going to impose an additional 24 months of Post-Release Control time consecutive to the 26 years that I am imposing on the 13 counts, so your aggregate sentence is going to be 28 years, that is two years on each of the 13 Counts, both imposed consecutive, and 24 months imposed on the Post-Release Control Violation.

{¶44} The trial court complied with R.C. 2929.14(C)(4) in ordering consecutive service during the sentencing hearing.

{¶45} In *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29-31, the Supreme Court of Ohio held the following:

When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel. *See* Crim.R. 32(A)(4). And because a court speaks through its journal, *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 47, the court should also incorporate its statutory findings into the sentencing entry.

However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.

A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court. *See State v. Qualls,* 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 15 (where notification of postrelease control was accurately given at the sentencing hearing, an inadvertent failure to incorporate that notice into the sentence may be corrected by a nunc pro tunc entry without a new sentencing hearing). But a nunc pro tunc entry cannot cure the failure to make the required findings at the time of imposing sentence. *See State v. Miller,* 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 16 ("a nunc pro tunc order cannot cure the failure of a judge to impose restitution in the first instance at sentencing").

And a sentencing entry that is corrected by a nunc pro tunc entry incorporating findings stated on the record at the sentencing hearing does not extend the time for filing an appeal from the original judgment of conviction and does not create a new final, appealable order. *See State v. Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 20 ("a nunc

pro tunc judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken").

{¶46} Although the trial court made the statutorily required findings during the sentencing hearing, a review of the judgment entry on sentencing reveals it failed to incorporate these findings into the sentencing entry contrary to *Bonnell.*

{¶47} Upon review, we vacate the sentence and remand the matter to the trial court to issue a nunc pro tunc judgment entry on sentencing to include the requisite findings.

{¶48} We note in his appellate brief at 4, appellant argues his twenty-eight year sentence is "greatly excessive and manifestly disproportionate to the actual crime."

{¶49} As explained by this court in *State v. Ewert,* 5th Dist. Muskingum No. CT2012-0002, 2012-Ohio-2671, ¶ 32-33:

> As relevant to this appeal, under R.C. 2929.11(B), a felony sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." "To support a claim that a 'sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal.' " *State v. Searles,* 8th Dist. No. 96549,

2011-Ohio-6275, ¶ 25, quoting *State v. Edwards,* 8th Dist. No. 89181, 2007-Ohio-6068, ¶ 11.

A felony sentence should be proportionate to the severity of the offense committed, so as not to "shock the sense of justice in the community." *State v. Chafin,* 30 Ohio St.2d 13, 17. *See also* R.C. 2929.11(B). A defendant alleging disproportionality in felony sentencing has the burden of producing evidence to "indicate that his sentence is directly disproportionate to sentences given to other offenders with similar records who have committed these offenses * * *." *State v. Breeden,* 8th Dist. No. 84663, 2005-Ohio-510, ¶ 81.

{¶50} Appellant did not raise this issue in the trial court, and has not provided this court with any explanation or evidence as to why or how his sentence is disproportionate.

{¶51} While the sentence imposed is lengthy, appellant committed thirteen acts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322. In 2009, appellant pled guilty to one count of pandering obscenity involving a minor in violation of R.C. 2907.321, and was sentenced to three years in prison and ordered to register as a Tier I sex offender. After his release from prison, appellant went right back to engaging in the same behaviors as before.

{¶52} As stated by our brethren from the Eighth District in *State v. Duhamel,* 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145, ¶ 54 and 61, respectively:

***In *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the U.S. Supreme Court recognized the government's interest in safeguarding the physical and psychological well-being of children and in preventing their sexual exploitation. *Id.* at 756-757. Every video or image of child pornography on the internet constitutes a permanent record of that particular child's sexual abuse. The harm caused by these videos is exacerbated by their circulation. *Id.*

***

Moreover, the children depicted in the images or videos are the victims of pandering sexually oriented material involving a minor offenses. *State v. Meadows,* 28 Ohio St.3d 43, 49, 503 N.E.2d 697 (1986). Each video presents a different child or group of children. Individuals who view or circulate child pornography harm the child in several ways (1) by perpetuating the abuse initiated by the creator of the material, (2) by invading the child's privacy, and (3) by providing an economic motive for producers of child pornography. *U.S. v. Norris,* 159 F.3d 926 (5th Cir.1998). As previously stated, the dissemination of child pornography exacerbates and continues the exploitation and victimization of the individual child. *Ferber,* 458 U.S. 747 at 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113; *See also U.S. v. Sherman,* 268 F.3d 539, 545 (7th Cir.2001) (even a "passive consumer who merely receives or possesses the images directly contributes to this continuing victimization.").

*See also State v. Starcher,* 5th Dist. Stark No. 2015CA00058, 2015-Ohio-5250.

{¶53} "Each child pornography file or image that is downloaded is 'a new and distinct crime.' *State v. Eal,* 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 93." *State v. Mannarino,* 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, ¶ 53.

{¶54} The quantity of appellant's offenses, coupled with his prior conviction for a similar offense, clearly and convincingly support the trial court's sentence. R.C. 2953.08(G)(2).

{¶55} Assignment of Error II is granted as to the sentencing entry and denied as to the consecutive nature and length of the sentence.

III

{¶56} Appellant claims the trial court committed plain error in admitting into evidence his prior felony conviction for pandering obscenity involving a minor despite the fact that he did not testify at trial. We disagree.

{¶57} The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage,* 31 Ohio St.3d 173 (1987). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶58} As set forth above, the state filed a pretrial Evid.R. 404(B) notice of intent to introduce appellant's prior conviction at trial. Evid.R. 404(B) states the following:

**(B) Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶59} Identity was at issue at trial. Appellant was arrested for pandering sexually oriented matter involving a minor while visiting the home of his mother and stepfather. During opening statement, appellant stated, "[a]s far as the residence goes, there is two people that live there, my mom and stepdad, and yeah, I went there sometimes, still, I mean, so I don't know, it just goes to show that any one of them have an interest, all of them have knowledge." November 18, 2014 T. at 132-133. Appellant further stated, "as far as like my mom or stepdad, I don't know what stepdad was into, but I know that my mom gets porn." *Id.* at 137-138.

{¶60} During appellant's cross-examination of Detective Dave Rohn, appellant asked the following: "All right. Aside from the fact that I was at the residence when you collected the evidence, was there any evidence to suggest or know from your evidence that proves that I was at the residence, other than any days that you were at the

residence, video, phone calls, or pictures that says that I was there any other days at the residence?" *Id.* at 163-164. The detective responded in the negative. *Id.* at 164.

{¶61} Also during opening statement, appellant mentioned his prior conviction for pandering obscenity. *Id.* at 135-139. In its case-in-chief, the state moved to admit appellant's prior conviction into evidence (State's Exhibit 6) and the following exchange occurred on the record during a sidebar (*Id.* at 181-182):

> MR. LANGE: Your Honor, at this point in time, I move the Court to accept into evidence the Defendant's prior conviction, pandering obscenities. He raised the issue of identify and Detective Rohn laid the foundation, identified the person, gave the date of birth, 11-9-73, and three people drove to the house and identify is at issue in the case, and the Defendant raised that issue of identify in the Opening Statement.
>
> THE COURT: Mr. Cooper?
>
> MR. COOPER: I don't mind about that.
>
> THE COURT: You are okay to that? Okay. The Certified copy of the prior conviction is admitted without objection.

{¶62} Appellant did not object to the admission of the evidence, in fact he acquiesced when specifically asked. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the

error.  *Long.*  Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id.* at paragraph three of the syllabus.

{¶63}  Appellant has not demonstrated error, let alone plain error.  Given that appellant mentioned his prior conviction during his opening statement, consented to the introduction of his prior conviction, and placed identity at issue, we find the trial court did not abuse its discretion in admitting the evidence.

{¶64}  Assignment of Error III is denied.

{¶65}  The judgment of the Court of Common Pleas of Ashland County, Ohio is affirmed in part and the sentence is vacated, and the matter is remanded to said court for the limited purpose of issuing a nunc pro tunc sentencing entry in accordance with the law and this opinion.

By Farmer, P.J.

Wise, J. concurs.

Hoffman, J. dissents.

SGF/db 76

*Hoffman, J., concurring in part and dissenting in part*

**{¶66}** I concur in the majority's analysis and disposition of Appellant's first and third assignments of error except for the standard of review utilized in reviewing the trial court's admission of Appellant's prior conviction.[1]

**{¶67}** I further concur in that part of the majority's analysis and disposition of Appellant's second assignment of error vacating Appellant's sentence and remanding the matter for resentencing pursuant to *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177.

**{¶68}** However, I respectfully dissent from the majority's analysis and decision finding the record clearly and convincingly supports the trial court's decision to impose all of Appellant's sentences consecutively.

**{¶69}** I believe the majority's reliance on this Court's opinion in *State v. Ewert*, 5th Dist. Muskingum No. CT2012-0002, 2012-Ohio-2671, is misplaced. I find the pertinent issue herein is whether the imposition of consecutive sentences is disproportionate to the seriousness of the offender's conduct under R.C. 2929.14(C)(4), not whether Appellant's sentence on each count is consistent with sentences imposed for similar crimes committed by similar offenders under R.C. 2929.11(B). Appellant's sentence on each offense is not excessive on its own apart from the trial court's order the sentences run consecutive for a total of twenty-six years in prison. Accordingly, I find lack of evidence of sentences given to other offenders with similar records who committed the same offense as Appellant committed does not end the analysis. I find the record is sufficient

---

[1] For further explanation, see my concurring opinion in *State v. Baughman*, 5th District Fairfield App. No. 13-CA-49, 2014-Ohio-1821.

to analyze whether the imposition of consecutive sentences is disproportionate to the seriousness of Appellant's conduct in this case. The analysis is between Appellant's sentence and his conduct in this case, not between Appellant's sentence on a particular offense and that of other offenders of that same offense.[2]

{¶70} The record demonstrates Appellant downloaded [and presumably viewed] thirteen videos of child pornography on his mother's computer over a three day period. Although Appellant committed thirteen separate offenses, it appears to have been one continuing course of conduct. There is no indication in the record Appellant ever distributed or attempted to forward any of the videos to anyone else. There is no record evidence Appellant ever "acted out" on his sexual predilection by contacting or attempting to contact a juvenile for sexual purposes.

{¶71} I certainly do not mean to suggest the viewing of child pornography is not a serious offense. It is a morally reprehensible, offensive crime. Material involving the sexual exploitation of juveniles is both shocking and disgusting.

{¶72} Yet the legal question remains: Is 26 years in prison a proportionate sentence in light of the seriousness of Appellant's conduct?

{¶73} There was no direct, immediate harm done to any person (with the possible exception of Appellant himself) as a result of Appellant downloading the videos.[3]

{¶74} I offer the following hypothetical for purpose of illustration.

---

[2] R.C. 2929.14(C)(4), "the court may require the offender serve the prison terms consecutively if the court finds…the consecutive sentences are not disproportionate to the offense.

[3] I acknowledge an indirect harm results in that Appellant and others like him who download such pornography create a market for the production of such material, thereby victimizing children.

**{¶75}** Had Appellant downloaded 56 videos of child pornography over those same three days would 112 years in prison be proportionate to the seriousness of the crime? Would such justify what would, in effect, constitute a life sentence to prison?

**{¶76}** An offender who commits gross sexual imposition against a juvenile victim is subject to a maximum of five years in prison. Should such offender commit gross sexual imposition against one victim on five separate occasions, or once against five different victims, the maximum consecutive sentence such offender could receive would be a total of 25 years in prison. Here, Appellant received 26 years in prison for conduct which many, if not most or all, would view less serious than the actual direct harm caused to a juvenile victim(s) by commission of gross sexual imposition.

**{¶77}** While I do not find it inappropriate to impose an additional 24 months in prison for violation of his Post-Release Control consecutive to the sentence for the offenses for which Appellant was convicted in this case, I find the 26 year consecutive sentence is disproportionate to the seriousness of Appellant's conduct.