JOURNAL ENTRY AND OPINION
{¶ 1} Defendant William Breeden appeals from his conviction for felonious assault, kidnapping and possession of criminal tools. For the reasons set forth below, we affirm.
 {¶ 2} On January 5, 2004, defendant was indicted for two counts of felonious assault, two counts of kidnapping,[1] and possession of criminal tools, all in connection with an alleged attack on Lisa Miller while she was jogging in Lakewood. Defendant pled not guilty and moved to suppress his oral statement and also moved to suppress Miller's identification of him.
 {¶ 3} The trial court denied the motions to suppress following an evidentiary hearing and the matter proceeded to a jury trial on the merits on April 1, 2004.
 {¶ 4} The state's evidence demonstrated that at approximately 10:30 p.m., on November 4, 2003, then eighteen year-old Miller jogged eastward on Detroit Road to Warren Road, then headed east on Franklin Avenue. She began walking on Franklin Avenue and, as she approached the high school, she observed a man approximately ten feet behind her. Concerned that the man was following her, Miller crossed the street and continued walking, then periodically looked back to determine where he was.
 {¶ 5} Miller turned onto Bunts Road and proceeded southward. She noticed the same man a couple of feet behind her. The man eventually passed Miller on the left and went to a nearby car. She then heard someone running behind her and, as she turned to look back, the man put a belt around her neck. She put her hand to her neck and screamed for help. The man dragged her down the street.
 {¶ 6} Ronnie Salti, who was also jogging nearby, heard a woman screaming. He then saw Miller on the ground with something around her neck and a man wrestling with her and pulling the ends of the belt. Salti crept over then removed the belt from Miller's neck and began to struggle with the man.
 {¶ 7} Rebecca Eimer and her boyfriend Justin Gavin were watching television on Bunts Road and heard a woman screaming. Gavin looked outside and saw Miller with something around her neck, and two men struggling. Eimer yelled to leave the woman alone and Gavin chased one of the men as he ran from the scene. Gavin chased the assailant toward Franklin Avenue. The assailant fled behind houses to a wooded area. Gavin lost sight of the man but observed that he was approximately 5'10" and was wearing jeans and a blue shirt. Gavin later identified defendant as the assailant.
 {¶ 8} Eimer brought Miller into the house and called police. The women told police that the assailant ran north on Bunts Road. Miller described the assailant as a white male with brown hair and facial hair. She also informed police that the man was wearing jeans and a blue shirt with the word "construction" on it.
 {¶ 9} Police arrived approximately two minutes later and spoke to Miller and Eimer. A short time later, Officer Scott McLaughlin, who was working an off-duty assignment at Giant Eagle located on Detroit Road at Bunts Road, heard a radio broadcast that a man had assaulted a woman with a belt then fled northbound on Bunts. McLaughlin then observed someone running across Parkhaven Road, just west of the store then notified the other officers.
 {¶ 10} Officer Pickens and his partner observed defendant hiding under a deck on Robinwood Avenue, approximately a block and a half away from the area where Miller was attacked. He was wearing jeans and a shirt which said, "Cox Construction." According to Pickens, defendant told the officers that he attacked Miller because he mistook her for a gay man who had previously made a pass at him. Pickens further established that, when defendant was booked at the police station, his underwear was down near his thighs.
 {¶ 11} Miller was transported to the scene and identified defendant as the assailant. She later went to the hospital where she was treated for scrapes and bruises.
 {¶ 12} Police investigator Scott Trommer photographed the area as well as marks on Miller's elbow and neck. He also learned that defendant's vehicle was parked at 1495 Charles in Lakewood.
 {¶ 13} Det. Leslie Day Wilkins and Det. Kevin Kaucheck established that, at the police station the following morning, Det. Wilkins read defendant his Miranda warnings. He was also given a form which contained the warnings and he verified in writing that he understood his rights. Wilkins then asked him about the incident, in the presence of Det. Kaucheck, and defendant reportedly stated that at the time of the attack, he thought that he was being followed by a homosexual man who had propositioned him. Defendant decided to beat the man up. He later saw Miller and mistook her for the man. After he forced Miller to the ground, he realized that she was not the man. Defendant declined to make a written statement, however.
 {¶ 14} Defendant testified that he has been convicted of breaking and entering, grand larceny, and also has a firearms violation. He stated that, on the night of his arrest, he was walking around and looking for a house to break into. He noticed police and hid under a deck but was subsequently arrested. He denied attacking Miller and denied admitting involvement in this matter to the police.
 {¶ 15} Defendant was convicted of the remaining three charges. The court subsequently sentenced defendant to seven years imprisonment on the felonious assault charge, five years imprisonment for kidnapping, and six months for the possession of criminal tools charge, plus post-release control, and ordered all terms to be served concurrently. Defendant now appeals and assigns five errors for our review.
 {¶ 16} Defendant's first assignment of error states:
 {¶ 17} "The trial court erred when it overruled appellant's motion to suppress his oral inculpatory statement in violation of his rights against self-incrimination."
 {¶ 18} Within this assignment of error, defendant asserts that the trial court erred in denying his motion to suppress his oral statement to police, because he claims, he did not believe that his comments were considered a "statement" which could be used against him, and the Lakewood Police did not clarify for him that oral comments could be admitted into evidence.
 {¶ 19} A statement made by an accused in the course of a custodial interrogation is admissible at trial only upon proof that the accused was advised of his constitutional rights and that the accused voluntarily, knowingly, and intelligently waived those rights. State v. Dailey
(1990), 53 Ohio St.3d 88, 91, 559 N.E.2d 459, citing Miranda v. Arizona
(1966) 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. See, also,State v. Hamilton, Clermont App. No. CA2001-04-044, 2002-Ohio-560.
 {¶ 20} In this matter, Officer Wilkins testified that she advised defendants of his rights, and that defendant also read them on the Waiver of Rights form. It is undisputed that defendant signed a Waiver of Rights form which provided in relevant part as follows:
 {¶ 21} "Before we ask you any questions, you must understand your rights:
 {¶ 22} "You have the right to remain silent. Anything you say can be used against you in a court. You have the right to talk to an attorney for advice, before we ask you any questions, and to have an attorney present during any questioning. If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.
 {¶ 23} "* * *
 {¶ 24} "Do you understand this?
 {¶ 25} "ANSWER Yes."
 {¶ 26} Defendant also testified that he is able to read and write.
 {¶ 27} From the foregoing, the city apprised defendant of his rights and he affirmed that he understood that anything that he said could be used against him. The record therefore plainly indicates that he voluntarily, knowingly, and intelligently waived those rights. Defendant's claim that he did not know that oral comments were considered a "statement" which could be used against him, is disingenuous as the waiver form clearly pertains to "anything you say" and defendant affirmed that he understood his rights.
 {¶ 28} This assignment of error is without merit.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "The trial court erred when it overruled appellant's motion to suppress identification testimony."
 {¶ 31} Defendant next asserts that the trial court erred in refusing to suppress evidence concerning Miller's identification of him after he was apprehended by police, because he claims, the police used unduly suggestive procedures which produced an unreliable identification.
 {¶ 32} To warrant suppression of identification testimony, the defendant bears the burden of establishing that the identification procedure was unreliable under the totality of the circumstances and "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers (1972), 409 U.S. 188,199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 * * *. A confrontation may be unnecessarily or unduly suggestive when the witness has been shown one suspect. Manson v. Brathwaite (1977), 432 U.S. 98, 115, 97 S.Ct. 2243, 2253,53 L.Ed.2d 140. Any resulting identification is admissible, however, if the identification is reliable under the totality of the circumstances. Id. See, also, State v. Garner (1995), 74 Ohio St.3d 49, 61, 1995-Ohio-168,656 N.E.2d 623.
 {¶ 33} The Supreme Court of the United States has set forth the following five factors to determine reliability: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Neil v. Biggers, supra, 409 U.S. at 199-200.
 {¶ 34} Applying the requisite factors, the trial court properly determined that Miller's identification of defendant was reliable under the totality of the circumstances in this case. With regard to the first two factors, Miller observed her assailant following her, approximately ten feet away, from Franklin Avenue through to Bunts Road and that he then passed her on her left as she jogged. She further established that the streets were well-lit and that defendant was immediately next to her as he passed. She heard him behind her a second time and, as she turned around, she saw him as he placed the belt around her neck. She noted and reported to police that he was a white male, with dark hair and goatee, and that he was wearing a blue shirt that had the word "construction" on it. As to the third factor, Miller's description matches defendant's physical characteristics and clothing, as he was wearing a blue shirt with the words "Cox Construction" at the time he was apprehended a short time later. As to the fourth factor, Miller indicated that she was "positively sure" that defendant was the assailant. Finally, as to the length of time between the crime and the confrontation, the evidence demonstrated that Miller identified defendant approximately ten to fifteen minutes after officers responded to the scene. In accordance with the foregoing, the totality of the circumstances of this case indicates that the identification was reliable and the trial court did not err in refusing to suppress it.
 {¶ 35} This assignment of error is without merit.
 {¶ 36} Defendant's third assignment of error states:
 {¶ 37} "The trial court erred in denying trial counsel's motion for a mistrial because of highly prejudicial statements made to the jury."
 {¶ 38} Within this assignment of error, defendant asserts that the trial court erred in denying his motion for a mistrial after the state cross-examined him as to whether he had planned on raping Miller.
 {¶ 39} Trial courts enjoy broad discretion in ruling on motions for mistrial. State v. Iacona (2001), 93 Ohio St.3d 83, 100, 752 N.E.2d 937;State v. Sage (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., State v. Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894;State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 40} In examining whether a mistrial is appropriate, a court should use a balancing test under "which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." Id.; see, also, UnitedStates v. Scott (1978), 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, 580 N.E.2d 1 citing Illinois v. Somerville
(1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.
 {¶ 41} Pursuant to Evid.R. 611, "cross-examination shall be permitted on all relevant matters * * *." Under Evid.R. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 42} In this instance, the trial court did not abuse its discretion in denying the motion for a mistrial. This area of cross-examination addressed a fair inference from the fact that defendant was apprehended with his pants unzipped and, at the time of booking, officers learned that his underwear was near his knees. Moreover, the question concerned defendant's motive, intent, and plan in the assault.
 {¶ 43} The third assignment of error is without merit.
 {¶ 44} Defendant's fourth assignment of error states:
 {¶ 45} "The trial court erred and denied appellant his constitutional right to due process when it denied defense counsel's request for lesser included [offense] jury instructions."
 {¶ 46} Here, defendant complains that the trial court erred in refusing to instruct on assault as a lesser included offense of felonious assault and abduction as a lesser included offense of kidnapping.
 {¶ 47} An offense may be a lesser included offense of another when (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph three of the syllabus. A charge on a "lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988),40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus; Statev. Shane (1992), 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272. Conversely, if the jury could not reasonably find against the State on any element of the crime, then a charge on a lesser included offense is not only not required but also improper. State v. Thomas, supra.
 {¶ 48} Assault is a lesser included offense of felonious assault.State v. Nipper, 12th Dist. No. CA2002-06-135, 2003-Ohio-4449; State v.Cochran, 2nd Dist. No. 19448, 2003-Ohio-3980; State v. Booth, 4th Dist. No. 02CA30, 2003-Ohio-2064.
 {¶ 49} Pursuant to R.C. 2903.11(A)(2), felonious assault is defined as:
 {¶ 50} "(A) No person shall knowingly:
 {¶ 51} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * * or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 52} Pursuant to R.C. 2903.13, assault is defined as:
 {¶ 53} "(A) No person shall knowingly cause or attempt to cause physical harm to another * * * [or].
 {¶ 54} "(B) No person shall recklessly cause serious physical harm to another or to another's unborn."
 {¶ 55} The distinguishing element between felonious assault in violation of R.C. 2903.11(A)(2) and assault in violation of R.C. 2903.13(A) is whether the actor used a deadly weapon. State v. Cochran, Montgomery App. No. 19448, 2003-Ohio-3980.
 {¶ 56} R.C. 2923.11 defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." The Committee Comments to this statute further provide:
 {¶ 57} "`Deadly weapon' is defined as any device capable of causing death, and which is either designed or specially adapted for use as a weapon (such as a gun, knife, billy, or brass knuckles), or is carried, possessed, or used as a weapon (such as a rock or cane when used for offensive or defensive purposes)."
 {¶ 58} In State v. Deboe (1977), 62 Ohio App.2d 192, 193-194,406 N.E.2d 536, the court held:
 {¶ 59} "An instrument, no matter how innocuous when not in use, is a deadly weapon if it is of sufficient size and weight to inflict death upon a person, when the instrument is wielded against the body of the victim or threatened to be so wielded. The manner of use of the instrument, its threatened use, and its nature determine its capability to inflict death."
 {¶ 60} Accord State v. Ford (Jan. 18, 1995), Montgomery App. No. 14389. See, also, In re Smith (2001), 142 Ohio App.3d 16, 753 N.E.2d 930
(The ballpoint end of a pen sufficiently sharp that it could cause death if used on a vulnerable spot may be found to be a deadly weapon); Statev. Ridley, Cuyahoga App. No. 82164, 2003-Ohio-3961 (golf club can be a deadly weapon); State v. Pope (Oct. 4, 1990), Logan App. No. 8-89-19 (toilet plunger handle may be found to be a deadly weapon).
 {¶ 61} In this matter, the belt was not, in and of itself, a deadly weapon. However, when the assailant squeezed it around Miller's neck, it was clearly capable of inflicting death. Accordingly, the evidence presented at trial in this case did not reasonably support an acquittal on the charge of felonious assault, and instruction on assault was not warranted.
 {¶ 62} Defendant next complains that the trial court erred in refusing to instruct on abduction as a lesser included offense of kidnapping.
 {¶ 63} As an initial matter, we note that there is a conflict as to whether abduction is a lesser included offense of kidnapping. State v.Fleming (1996), 114 Ohio App.3d 294, 298, 683 N.E.2d 79 (abduction cannot be considered a lesser included offense of kidnapping); State v.Morgan, Cuyahoga App. No. 81508, 2004-Ohio-6304 (same). But, see, Statev. Huber, Cuyahoga App. No. 80616, 2002-Ohio-5839 (abduction is a lesser included offense of kidnapping); State v. Ogletree, Cuyahoga App. No. 79882, 2002-Ohio-4070 (same); State v. Foster (June 22, 2000), Cuyahoga App. No. 76383 (same).
 {¶ 64} Kidnapping is defined in R.C. 2905.01 as follows:
 {¶ 65} "(A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 66} "* * *
 {¶ 67} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 68} "(3) To terrorize, or to inflict serious physical harm on the victim or another[.]"
 {¶ 69} Abduction is defined in R.C. 2905.02 as:
 {¶ 70} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 71} "(1) By force or threat, remove another from the place where the other person is found;
 {¶ 72} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]"
 {¶ 73} In this matter, no evidence was presented which would have caused the jury to find appellant guilty of abduction but not guilty of kidnapping. The evidence demonstrated that defendant followed Miller, threw a belt around her neck and forced her down the street. Miller was terrified and screamed hysterically. It was later established that defendant's pants were unzipped and his underwear was near his knees. This evidence supports a conviction for kidnapping, in that Miller was removed from the place where she was found to facilitate a felony or to inflict serious physical harm through strangulation. It is undisputed that she was terrorized. The evidence did not reasonably support an acquittal on the kidnapping charge. Therefore, no instruction on abduction was required.
 {¶ 74} The fourth assignment of error is without merit.
 {¶ 75} Defendant's fifth assignment of error states:
 {¶ 76} "The trial court failed to make a finding that the appellant's sentence is consistent with similarly situated offenders."
 {¶ 77} Defendant next complains that his sentence is contrary to law because the trial court did not ensure that it is consistent with sentences imposed upon other similarly situated offenders.
 {¶ 78} R.C. 2929.11(B) reads as follows:
 {¶ 79} "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 80} The goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve "consistency" not "uniformity." State v. Klepatzki, Cuyahoga App. No. 81676, 2003-Ohio-1529. The court is not required to make express findings that the sentence is consistent with to other similarly situated offenders. State v. Richards, Cuyahoga App. No. 83696, 2004-Ohio-4633;State v. Harris, Cuyahoga App. No. 83288, 2004-Ohio-2854. The court's comments made at the sentencing hearing should reflect that the court considered that aspect of the statutory purpose in fashioning the appropriate sentence. State v. Harris, Cuyahoga App. No. 83288, 2004-Ohio-2854, citing State v. Edmonson, 86 Ohio St.3d 324 at 326-327,1999-Ohio-110, 715 N.E.2d 131. This court has also determined that in order to support a contention that his or her sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal. State v. Woods, Cuyahoga App. No. 82789, 2004-Ohio-2700.
 {¶ 81} In this matter, defendant did not present evidence to the trial court or to this court to indicate that his sentence is directly disproportionate to sentences given to other offenders with similar records who have committed these offenses, nor did he present evidence as to what a "proportionate sentence" might be. Nothing of record suggests that the court-imposed sentence is inconsistent with or disproportionate to sentences that have been imposed on similar offenders who have committed similar offenses. The record further indicates that defendant has an extensive record, having been previously convicted of theft of a firearm, larceny, and breaking and entering, and he was on parole at the time of the offense. The sentence was commensurate with the seriousness of the offense, the gravity of its impact upon the victim, and the defendant's history and no disproportionality has been shown.
 {¶ 82} The fifth assignment of error is without merit. Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and McMonagle, J., concur.
[1] The state dismissed one of the felonious assault charges and one of the kidnapping charges at the start of its case.