[Cite as *State v. Hall*, **2025-Ohio-1708.**]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

ARZENOUS A. HALL,

        Defendant-Appellant.

CASE NO. 2024-P-0073

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 00367

---

## OPINION AND JUDGMENT ENTRY

Decided: May 12, 2025
Judgment: Affirmed

---

*Connie J. Lewandowski*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Wesley C. Buchanan*, 50 South Main Street, Suite 625, Akron, OH 44308 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1}    Appellant, Arzenous A. Hall, appeals the entry imposing sentence after a jury found him guilty of one count of felonious assault and one count of attempted petty theft. We affirm.

{¶2}    This case stems from an incident occurring in the parking lot of the Streetsboro VFW on May 4, 2024. On that date, a husband and wife, who were members of the VFW and its auxiliary, were watching their two- and three-year-old grandchildren while their daughter was out of town. The couple, who were present with their grandchildren at the VFW for an auxiliary meeting, exited the VFW building with their

grandchildren after the meeting. The wife, carrying bags of the children's belongings, and the husband, holding onto the children's hands, walked toward their daughter's car, a Kia Telluride, which they were using while caring for their grandchildren. At that time, Hall was parked next to the Kia in a white Jeep Renegade. When approaching the cars, the wife noticed someone underneath the Kia and started questioning them as to why they were under the car. While she was in front of the Jeep, Hall accelerated, the Jeep making contact with, and pushing, the wife forward, and off to the side. The husband attempted to stop Hall by holding onto the Jeep's door frame, but, as Hall continued to accelerate, the husband let go and rolled onto the ground. Hall drove out of the parking lot, followed by a VFW member driving a black truck, who had pulled into the parking lot during the incident. The VFW member called 911 to update law enforcement as to the Jeep's location. Officers located the Jeep at a mobile home park, and apprehended Hall, who was walking along a nearby road.

{¶3} The Portage County Grand Jury indicted Hall on the following charges: four counts of felonious assault, second-degree felonies, in violation of R.C. 2903.11 (one charge relative to the husband, the wife, and each grandchild); attempted petty theft, a first-degree misdemeanor, in violation of R.C. 2913.02 and 2923.02; and driving under suspension ("DUS"), a first-degree misdemeanor, in violation of R.C. 4510.11.

{¶4} Hall pleaded not guilty, and the matter was set for pretrial on June 11, 2024, and jury trial on June 25, 2024. On June 11, 2024, defense counsel moved to continue the trial, maintaining that "[d]efendant requires additional time to locate a witness, who is material to his defense." The trial court rescheduled the matter for a pretrial on July 2, 2024. On July 2, 2024, defense counsel again moved to continue, asserting that

Case No. 2024-P-0073

"[d]efendant wishes to review videos. Defendant is trying to connect witness, who was present during incident charged, with PD investigator." The trial court then scheduled the matter for a pretrial on August 6, 2024, a status conference on August 13, 2024, and a jury trial on August 20, 2024. Following the August 13, 2024 status conference, the trial court issued an entry stating that "the confirmed Jury Trial is set for August 20, 2024."

{¶5}    Thereafter, for reasons not apparent in the record, the court set the jury trial for August 22, 2024. On that date, defense counsel again filed a motion to continue, maintaining that Hall had provided counsel an address for a witness "on the afternoon of August 23, 2024," and Hall had "refused to contact Counsel to prepare his testimony for trial after rejecting plea offers today." Thus, defense counsel requested a brief continuance to attempt to serve the witness and to prepare Hall to testify. The trial court denied the motion.

{¶6}    The matter proceeded to jury trial, during which the State presented the testimony of several witnesses and introduced exhibits, including video footage of the incident as recorded by the VFW's outdoor, motion-activated cameras. After the State rested, it moved to amend the indictment to charge attempted petty theft as a second-degree misdemeanor. The trial court granted the motion. Thereafter, the defense moved for acquittal on all counts pursuant to Crim.R. 29. The trial court granted the defense's motion on the DUS charge only.

{¶7}    Hall testified on his own behalf. The defense then rested and renewed its Crim.R. 29 motion as to the remaining counts, which the court overruled.

{¶8}    Following deliberations, the jury acquitted Hall on the three felonious assault charges related to the husband and the two grandchildren. The jury found Hall guilty on

Case No. 2024-P-0073

the felonious assault charge relative to the wife and the attempted petty theft charge. The trial court ordered a presentence investigation and set the matter for sentencing.

{¶9} At sentencing, the trial court imposed a prison term of seven to ten and one-half years on the felonious assault count. This sentence was memorialized in an entry filed on October 22, 2024. Thereafter, on October 30, 2024, through a nunc pro tunc entry, the trial court included a sentence of 90 days of confinement on the attempted petty theft charge, to be served concurrently with the prison term imposed on the felonious assault count. Hall timely noticed an appeal.

{¶10} In his first and second assigned errors, Hall argues:

> [1.] The evidence was insufficient to convict Arzenous of felonious assault.
>
> [2.] Arzenous's convictions are against the manifest weight of the evidence.

{¶11} The question of whether sufficient evidence supports a conviction "is a test of adequacy," which we review de novo. *State v. Thompkins*, 1997-Ohio-52, ¶ 23. "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 2020-Ohio-6670, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶12} Unlike a review of the sufficiency of the evidence, our review of the "[w]eight of the evidence concerns 'the inclination of *the greater amount of credible evidence . . . to support one side of the issue rather than the other.*'" (Emphasis in original.) *Thompkins* at ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). When considering challenges to

the weight of the evidence, an appellate court reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at ¶ 25, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶13} Thus, an appellate court's determination that a conviction is not against the weight of the evidence necessarily incorporates a conclusion that sufficient evidence supports the conviction. *State v. Fiederer*, 2020-Ohio-4953, ¶ 11 (11th Dist.).

{¶14} Here, on appeal, Hall challenges the sufficiency and weight of the evidence supporting his felonious assault conviction. The offense of felonious assault is proscribed by R.C. 2903.11(A)(2), which provides, in relevant part, "No person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance." Pursuant to R.C. 2901.22(B):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense,

Case No. 2024-P-0073

such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶15} In support of the charges, at trial, the State presented the testimony of the VFW and its auxiliary members, a 911 dispatcher, and three Streetsboro police officers. An audio recording of the 911 calls and video footage of incident were admitted into evidence.

{¶16} The testimony and exhibits indicate that on May 4, 2024, at approximately 11:30 a.m., the husband and wife exited the VFW building with their young grandchildren and walked into the parking lot toward their daughter's Kia. The wife, who was carrying bags containing the grandchildren's belongings, walked in front of the husband, who held the grandchildren's hands. The wife observed a white Jeep parked next to her daughter's Kia. The doors of the Jeep were open "to the point that it looked like they were touching the vehicle," despite other vacant parking spaces being available. The wife explained that, as she came closer the Kia, she observed someone underneath it. Standing in front of the Jeep, the wife asked "what are you doing under my car?" The driver of the Jeep then "pushed -- he hit the gas pedal and kind of pushed [the wife] forward and [she] kind of rolled up. And when [the driver] kind of stopped, [the wife] was trying to roll [her]self off the front of the car[.]" Once she was off of the car, the Jeep pulled away.

{¶17} When the husband, who was initially preoccupied with the grandchildren, saw the Jeep coming into contact with his wife, he moved the grandchildren aside and reached onto the driver's door of the Jeep in an attempt to stop the driver. However, he was unable to make contact with the driver of the Jeep, and, when the Jeep continued to accelerate, the husband released his hold and rolled onto the ground at the entrance of

the parking lot. As the husband rolled onto the ground, another VFW member, driving a black truck, was pulling into the lot. The husband stood up, instructed the other VFW member to follow the Jeep, and looked for a license plate number on the back of the Jeep, but no license plate was displayed. The husband then called 911.

{¶18} The other VFW member pursued the white Jeep, called 911, and updated dispatch as to the Jeep's location as he followed behind him. The Jeep eventually pulled into a mobile home park, where the VFW member lost sight of it.

{¶19} Dispatch informed law enforcement of the report that individuals in the Jeep had apparently attempted to steal the catalytic converter from a vehicle in the VFW parking lot and then fled the scene after nearly hitting an individual. Dispatch updated law enforcement as to the Jeep's whereabouts based upon the information received by the trailing VFW member. After sight of the Jeep was lost in the mobile home park, three Streetsboro police officers created a perimeter around the park. They then searched the park but were unable to locate the Jeep. After searching an area nearby, an officer driving on a roadway outside the mobile home park observed a white Jeep in the backyard of a mobile home. The officers then approached the Jeep, which was empty. While the officers searched, a woman in the park advised them that, while she was walking her dog earlier, she saw a male walking down the road away from the Jeep. Officers detained Hall, who was walking down the road from the park.

{¶20} An officer testified that, after Mirandizing Hall, he asked if Hall was involved with the Jeep, and he said he was not; he had been riding with a friend in a truck. Then, the officer drove Hall to where the Jeep was located and asked Hall if that was the vehicle he was in with his friend. Hall replied that it was, but he was a passenger, and his friend

Case No. 2024-P-0073

was driving. Officers then located a prescription bottle with Hall's name printed on the label. Upon learning that Hall had warrants for his arrest, officers searched his person and found a key to the Jeep in his pocket.

{¶21} After transporting Hall to the police station and commencing the booking process, Hall informed an officer he was in fact driving the Jeep that morning. He explained that, while he was parked at the VFW, a man came running at him, screaming the N-word, and tried to punch him. The officer conducted an inventory of everything in Hall's wallet, per standard procedure, and found a receipt from the Home Depot in Maple Heights showing a purchase of Milwaukee Sawzall blades at 7:22 a.m. on the day of the incident. An officer testified that Maple Heights is approximately one-half hour from Streetsboro.

{¶22} An officer who returned to the mobile home park located blades for a reciprocating saw, or a "Sawzall," in the tire tracks leading to the backyard where the Jeep was parked. In addition, a "Milwaukee Sawzall" blade was located under the edge of the Kia in the VFW parking lot.

{¶23} After inventorying the Jeep, officers located an empty case for Milwaukee Sawzall blades in the back of the vehicle, a charger for Milwaukee batteries, and another prescription bottle displaying Hall's name on the label.

{¶24} After the State rested, Hall testified on his own behalf as follows. Hall met a man named B.J. and a woman named Penny approximately a week prior to the incident. The night prior to the incident Hall stayed with B.J. and Penny at a hotel in Warrensville, Ohio. Hall was driving a Jeep that belonged to a friend of his. The morning of the incident, Penny and B.J. offered Hall $100 to give them a ride to go fix a car, and he agreed. First,

Case No. 2024-P-0073

B.J. drove Penny and Hall in the Jeep to the Home Depot to get tools. Hall maintained that he did not exit the Jeep. At some point thereafter, Hall began driving, as Penny gave him directions to the car. When they reached the car, Penny got out, but B.J. stayed in the car in the backseat. Hall asked him why he was not going out to help her, and B.J. replied that she knew what she was doing. At that point, Hall felt something was not right about the situation.

{¶25} Hall further testified that, while Penny was under the car, a woman and a man came out of the building, and the woman stood in front of the Jeep while the man tried to attack him on the side of the Jeep. Penny reentered the Jeep and yelled at Hall to move, because he was going to get killed. Hall stated that he was frantic and drove forward. After he left the parking lot, Hall saw a black truck following him, and believed it was the man who had tried to attack him. After driving into the mobile home park, Hall spoke to a resident who said Hall could park behind his mobile home. Hall then went with the resident into his garage and told him what was going on, and Penny left. When Penny returned, she told Hall to run because the police were there. The resident also told Hall he had to leave. Hall then began walking along Frost Road.

{¶26} Hall explained that when the officer first questioned him about the incident, he was not truthful with him because he was scared. Hall maintained that, although he had some traffic warrants, he had never before been charged with a felony. Hall maintained that he was hung over on the morning of the incident and unfamiliar with Portage County. He stated that he was unsure why it took them four hours to drive to the Streetsboro VFW from the Maple Heights Home Depot. Hall did not know how the Home Depot receipt got into his wallet.

Case No. 2024-P-0073

**{¶27}** As set forth above, the jury found Hall guilty of felonious assault against the wife and attempted petty theft, and, on appeal Hall challenges only his conviction for felonious assault. Hall maintains that the evidence demonstrated that he did not knowingly attempt to cause harm to the wife, and he was instead attempting to avoid hitting her with the Jeep. However, the evidence indicates that Hall was aware that the wife was present in front of the Jeep when he accelerated forward. In fact, in his testimony, Hall stated that when the wife was walking up to the Jeep, he was "just like please move, please move, please move."

**{¶28}** After a review of the record, we cannot say that the jury's determination that Hall knowingly attempted to cause physical harm to the wife by means of a deadly weapon is against the weight of the evidence. Accordingly, Hall's conviction is necessarily supported by sufficient evidence. Therefore, Hall's first and second assigned errors lack merit.

**{¶29}** In his third assigned error, Hall contends:

**{¶30}** "Arzenous received ineffective assistance of counsel."

**{¶31}** To prevail on a claim of ineffective assistance of counsel, "a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989); and *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Davis* at ¶ 10, citing *Bradley* at paragraphs two and three of the syllabus.

Case No. 2024-P-0073

**{¶32}** Here, Hall first maintains that defense counsel was deficient by failing to request an instruction on misdemeanor assault as a lesser included offense of felonious assault.

**{¶33}** "Whether a particular offense should be submitted to the jury as a lesser included offense of the crime charged is a two-part inquiry." *State v. Harper*, 2018-Ohio-2581, ¶ 55 (11th Dist.), citing *State v. Deanda*, 2013-Ohio-1722, ¶ 6. "First, the trial court must 'determine whether one offense is generally a lesser included offense of the charged offense.'" *Harper* at ¶ 55, quoting *Deanda* at ¶ 6, citing *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987).

> "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."

*Harper* at ¶ 55, quoting *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph three of the syllabus.

**{¶34}** "Second, '[t]he trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense.'" (Emphasis deleted.) *Harper* at ¶ 56, quoting *State v. Wine*, 2014-Ohio-3948, ¶ 34. "Instruction on the lesser offense is required where the evidence presented at trial could '"reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."'" (Emphasis deleted.) *Harper* at ¶ 56, quoting *Wine* at ¶ 21, quoting *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus. *See*

Case No. 2024-P-0073

*also State v. Evans*, 2009-Ohio-2974, ¶ 13, quoting *Shaker Hts. v. Mosely*, 2007-Ohio-2072, ¶ 11 ("[W]e have stated that after the three parts of the *Deem* test are met, '[i]f the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense, then the judge should instruct the jury on the lesser included offense.'" (Citations omitted.)). "'"[T]he trial court must view the evidence in the light most favorable to the defendant."'" *Harper* at ¶ 56, quoting *Wine* at ¶ 21, quoting *State v. Monroe*, 2005-Ohio-2282, ¶ 37.

**{¶35}** Here, the entirety of Hall's argument on appeal that trial counsel was ineffective for failing to request a jury instruction for misdemeanor assault consists of the following:

> In this case, trial counsel should have requested a jury instruction of misdemeanor assault. The outcome would have been different because the elements of assault are less than that of felonious assault.
>
> Therefore, Arzenous received ineffective assistance of counsel and his convictions must be reversed.

**{¶36}** Hall does not address the two-part inquiry as to whether an instruction on misdemeanor assault would have been appropriate in the case, instead stating only that the elements of "assault are less than that of felonious assault." Thus, Hall has failed to establish either the deficiency of counsel or the prejudice prong of ineffective assistance of counsel relative to counsel's failure to request an instruction on misdemeanor assault.

**{¶37}** Even if Hall addressed the two-part inquiry, his argument that counsel was ineffective fails because an instruction on assault under R.C. 2903.13(A) ("no person shall knowingly cause or attempt to cause physical harm to another") as a lesser included offense of felonious assault under R.C. 2903.11(A)(2) was not warranted in this case

because it fails the second tier of the analysis as discussed in *Deanda*, 2013-Ohio-1722. When applying the two-part inquiry outlined in *Deanda*, the analysis reveals that while assault is generally a lesser included offense of felonious assault, felonious assault under R.C. 2903.11(A)(2) requires the use of "a deadly weapon or dangerous ordnance"—in this case, a motor vehicle used as a deadly weapon when the defendant accelerated while the victim stood in front of the car. This specific element of felonious assault (that the alleged assault occurred by use of a deadly weapon) is not disputed here. When Hall deliberately accelerated knowing the victim was in the path of his vehicle during his flight from an attempted theft and pushing her forward and to the side without injury, he committed an act that is specifically addressed by the felonious assault statute's deadly weapon provision, which contains this element in addition to those elements that constitute simple assault. Therefore, the evidence presented at trial could not "'reasonably support both an acquittal'" on felonious assault "'and a conviction'" upon assault. *See Harper*, 2018-Ohio-2581, at ¶ 56 (11th Dist.).

{¶38} On point is our decision in *State v. Gunther*, 125 Ohio App.3d 226, 240 (11th Dist. 1998), in which we held:

> In the present case, appellant points to minor "inconsistencies" in the victim's testimony as to whether she actually saw the gun go off and whether the assailant struck her in the face with the gun or pointed the gun directly at her head. Appellant argues that these inconsistencies form the basis for a jury instruction on simple assault. However, the evidence was uncontroverted that the victim saw appellant with a gun and that he fired a round just missing her leg. Other than the appellant's denial that he was even there, there was no evidence presented to suggest that the gun was anywhere but in his hand at all times relevant to this attack. Under these facts, it cannot seriously be contended that appellant committed an assault without "a deadly weapon or dangerous ordnance."

Case No. 2024-P-0073

*See also State v. Breeden*, 2005-Ohio-510, ¶ 61 (8th Dist.) ("In this matter, the belt was not, in and of itself, a deadly weapon. However, when the assailant squeezed it around Miller's neck, it was clearly capable of inflicting death. Accordingly, the evidence presented at trial in this case did not reasonably support an acquittal on the charge of felonious assault, and instruction on assault was not warranted.").

**{¶39}** Because it cannot seriously be contended that appellant committed an assault without the Jeep, a deadly weapon, in this case, his counsel cannot have been ineffective—and the trial court could not have committed error—in not instructing the jury on the elements of assault as a lesser included charge for consideration.

**{¶40}** Next, Hall argues that trial counsel was ineffective because counsel was unprepared to go to trial. Hall premises this argument on the August 22, 2024 motion to continue, wherein defense counsel stated that he had been unable to serve a defense witness and prepare Hall to testify.

**{¶41}** However, nothing in the record establishes that counsel was deficient for not yet serving a defense witness or better preparing Hall to testify. *See State v. Carter*, 2017-Ohio-7501, ¶ 78 (7th Dist.) ("A claim of ineffective assistance of counsel in a direct appeal must be established by the evidence in the record."). On the contrary, the motion to continue alleged Hall provided an address where the witness would be located on August 23, 2024, the day after the motion to continue was filed. Based on the record, there is no indication that counsel should have been aware of a location to serve the witness prior to that date. Further, nothing in the record indicates that, had counsel been able to serve the witness or had Hall been more prepared to testify, the outcome of this

case would have been different. Moreover, the motion to continue asserted that *Hall had refused* to contact counsel to prepare his testimony.

**{¶42}** Accordingly, Hall's third assigned error lacks merit.

**{¶43}** In his fourth assigned error, Hall maintains:

**{¶44}** "The trial court abused its discretion by not permitting a continuance to subpoena a defense witness."

**{¶45}** "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65 (1981), syllabus. Thus, a reviewing court should not reverse the denial of a continuance absent an abuse of discretion. *Id.* at 67. "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.'" *State v. Marcellino*, 2019-Ohio-4837, ¶ 23 (11th Dist.), quoting *State v. Flanagan*, 2015-Ohio-5528, ¶ 42, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). When evaluating a motion to continue, the trial court should consider:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

(Citations omitted.) *Unger* at 67-68.

**{¶46}** Here, Hall maintains that the trial court abused its discretion in failing to grant the continuance filed on August 22, 2024.

**{¶47}** However, as set forth in our recitation of the procedural history, Hall requested, and was granted, two prior continuances to attempt to locate the whereabouts

Case No. 2024-P-0073

of the defense witness. The August 22, 2024 motion to continue was filed on the same date as the jury trial was set to commence, and the potential jurors were present to proceed. Further, as addressed in our discussion of Hall's third assigned error, the motion to continue was premised in part on defense counsel's assertion that Hall "has refused to contact Counsel to prepare his testimony for trial after rejecting plea offers today."

{¶48} Reviewing the circumstances of this case in light of the *Unger* factors, we cannot say that the trial court abused its discretion in denying the August 22, 2024 motion to continue. *See id.*, 67 Ohio St.2d at 67-68.

{¶49} Accordingly, Hall's fourth assigned error lacks merit.

{¶50} The judgment is affirmed.


ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2024-P-0073

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

---
JUDGE EUGENE A. LUCCI

---
PRESIDING JUDGE ROBERT J. PATTON,
concurs

---
JUDGE MATT LYNCH,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
| :---: |
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2024-P-0073